CARR v. BREDENBERG.

1. TRUSTS—TRUSTEE.—The fact that a trustee does not return his personal property for *city taxation*, is not a sufficient showing to require the trust fund to be paid into Court.

2. IBID.—IBID.—The Court will not permit a trust fund to be paid to a non-resident trustee, unless he execute a bond with resident sureties, conditioned that he will not remove the fund beyond the jurisdiction of the Court, and that he will account regularly for same before the proper officer.

3. TRUSTEE—REMAINDERMEN—APPEAL.—The failure of a trustee to appeal from an order directing the fund to be paid into Court, cannot affect the rights of contingent remaindermen who appeal from such order, and insist that the fund be retained by the trustee.

4. WILL—LIMITATION OF ESTATES.—Under the will in question, *under the contingency which now presents itself*, the plaintiff will be entitled to the fund in question after death of life tenant; but as other contingencies indicated in will *may* arise before death of life tenant, an order to that effect *now* is premature.

Before BENET, J., Charleston, July, 1896. Modified.

Action by Charles D. Carr against Henrietta Bredenberg and the children and grand-children of John J. Bredenberg. The Circuit decree is as follows:

The following are the facts of the case: 1. During the year 1867, Luder Bredenberg and J. Peter Bredenberg, brothers, were seized and possessed in equal shares, as tenants in common, of all the lot of land, with the buildings thereon, situate on the southwest corner of King and Broad streets, in the city of Charleston. 2. Luder Bredenberg died on the 14th day of May, 1868, leaving of force his last will and testament, bearing date the 4th May, 1868, which was, on the 18th May, 1868, duly admitted to probate in the county of Charleston, and of which the following is a copy, to wit: * * * "Item.—I give, devise and bequeath all my property, real and personal property, to my executrix and executor, hereinafter named, in trust for the following purposes, that is to say: to apply and pay over the whole income thereof, after deducting necessary expenses, to my dear wife, Henrietta Bredenberg, for and during the term of her natural life, if she should so long remain unmarried and my widow; and upon her death, then I give, devise and bequeath the whole of my said property to my son, Edward Henry Bredenberg, in fee; if he

should be then alive, or to his issue, should he be then dead; but in case my said wife should marry again, then, on the happening of that event, I will and direct my executrix and executor to pay over to her one-third part of my said estate, and to hold the balance for the support and maintenance of my said son until he is twenty-one years of age, and upon his arrival at that age, the balance of my estate I give to him and his heirs forever; but should my said son die before reaching the age of twenty-one years, or before his mother, leaving no issue, then I give, devise and bequeath the estate hereby given and devised to him, to be equally divided between my two brothers, J. J. Bredenberg and J. P. Bredenberg, if they should be then alive, or between their issue then living, the issue to represent and take a parent's share among them in said distribution."
3. Luder Bredenberg left surviving as his only heirs his widow, Henrietta Bredenberg, and his infant son, Edward Henry Bredenberg.   4. J. Peter Bredenberg died intestate and unmarried on 22d February, 1870, leaving as his only heirs at law his brother, John J. Bredenberg, and his nephew, the said Edward Henry Bredenberg.   5. Edward Henry Bredenberg died on the 12th April, 1875, in the ninth year of his age, intestate and unmarried, leaving his mother, Henrietta. Bredenberg, his sole heir and distributee.   6. On the 25th August, 1876, Henrietta Bredenberg, the widow of Luder Bredenberg, executed and delivered to John J. Bredenberg a deed of conveyance, of which the following is a copy, to wit: "State of Georgia, Richmond County.—This indenture, made the 25th day of August, in the year of our Lord 1876, between Henrietta Bredenberg (widow of Luder Bredenberg), of the State and county aforesaid, of the first part, and John J. Bredenberg, of the same place, of the second part, * * * in consideration of the sum of $5,578.15, hath granted * * * all her right, title, claim and interest of every kind whatsoever, whether derived through her deceased husband, Luder Bredenberg, her deceased son, Edward Henry Bredenberg,

or otherwise, of, in or to all that * * * except the life interest and estate therein bequeathed to her, and now held by her under the last will and testament of her deceased husband, Luder Bredenberg. It is the purpose and intention of this clause of this instrument to convey her entire interest in this property, derived from the estate of John Peter Bredenberg, whether as heir at law thereof or through her deceased husband, Luder Bredenberg, her deceased son, Edward Henry Bredenberg, or however else derived." * * * 7. By virtue of sundry judgments and executions against the said John J. Bredenberg, the sheriff of Charleston County sold and conveyed, on the 5th June, 1893, unto Charles D. Carr, the plaintiff herein, all the right, title and interest of the said John J. Bredenberg in the said premises, situate on the southwest corner of Broad and King streets, in the said city of Charleston. 8. On the 8th September, 1894, the said Charles D. Carr filed his complaint in the Court of Common Pleas for said county against the said Henrietta Bredenberg, for the construction of the said will and a partition of the said premises. 9. In December, 1894, by mutual agreement, Charles D. Carr and Henrietta Bredenberg, as surviving executrix of the will of Luder Bredenberg, conveyed said premises unto August F. Doscher. One-half of the net proceeds of sale was paid to the said Charles D. Carr, and the other half is now the subject of the pending litigation. 10. In March, 1895, the supplemental complaint herein was served, by leave of Court first had and obtained. 11. The defendant, Mrs. Henrietta Bredenberg, now is, and for the last twenty years has been, a resident of the city of Augusta, in the State of Georgia. She owns in fee simple a piece of real estate, situate at the corner of Broad and Houston streets, in said city, of the value of about $4,000. Besides this real estate, she owns other property of the value of about $4,500. She returns for taxation the real estate, and nothing else. 12. The plaintiff herein is also a resident of the city of Augusta, and has been for many years. 13. The defendants, except

Mrs. Henrietta Bredenberg, are the only issue now living of John J. Bredenberg, and all live in Augusta, Ga. 14. Mrs. Henrietta Bredenberg has never married since the death of her husband, Luder Bredenberg, and is still alive.

The plaintiff claims one-half of the above described real estate, conveyed by Mrs. Henrietta Bredenberg to J. J. Bredenberg, and consequently now in the fund representing it: 1. The right to hold the same, paying the income derived therefrom to Mrs. Bredenberg, during her life, and after that to hold it to his own use. But in this regard he is willing that the fund be turned over to the master, to be by him invested, and the income, after payment of taxes, &c., be paid to Mrs. Bredenberg for life, and the principal transferred to him after her death. 2. That if he has not this right to the fund, he has an undisputed vested remainder in it, subject to be divested in case of the death of Mrs. Bredenberg before J. J. Bredenberg—that is, in case J. J. Bredenberg shall survive Henrietta Bredenberg; and that, having this remainder without dispute, he is entitled to have the fund paid to the master and invested by him, to the end that he pay the income, less taxes, &c., to Mrs. Bredenberg during life, and turn the same over in case J. J. Bredenberg survives Mrs. Bredenberg.

On this latter point I have no doubt. "The general rule," says Mr. Justice Story, "upon which courts of equity proceed, in requiring money to be paid into Court, is this, that the party who is entitled to the fund is entitled to have it secured." Story Eq. Jur., sec. 841. And again: "The modern and perhaps the more approved practice will order the fund paid into Court, even if there be not any actual waste, or danger of waste, to the estate." *Ib.*, sec. 846. The cases supporting this in our Courts are numerous, but I content myself with referring to one, *Clark* v. *Devereux*, 1 S. C., 179. See, also, Perry on Trusts, sec. 541. The fact that Mrs. Bredenberg lives in Augusta, Ga., makes it certain that the fund, if paid to her, will be removed there, and this of itself is sufficient ground to have it paid into

Court.　*Homer* v. *Wilton*, 2 Met., 205.　Mrs. Bredenberg owns property to the amount of $4,500, over and above her realty, and she returns only the realty for taxation.　Carr is entitled to have the funds placed where the tax on them will certainly be paid, so that, when entitled to them, he shall receive them, unencumbered by debts which Mrs. Bredenberg should have paid.

As to the first claim of C. D. Carr.　He claims that Luder Bredenberg has not provided in his will for the contingency that has happened, viz: that one of testator's brothers, J. Peter Bredenberg, predeceased his son, Edward Henry Bredenberg; and that, consequently, there is an intestacy; that thus Mrs. Bredenberg, on the death of her son, became entitled to the entire lot in fee; that this fee passed by her deed to J. J. Bredenberg; and by the sheriff's sale of all of J. J. Bredenberg's interest, passed to C. D. Carr, subject only to her right to receive the income during life.

The will provides for two contingencies: 1st. The one which now exists, viz : That his widow, Henrietta Bredenberg, should not remarry, but remain his widow.　In this contingency, the gift is to his widow of a life estate in the whole property, to be divested in case of her marriage, and to his son a vested remainder in the whole estate in fee, to be divested in case of his death before his mother, and his issue, if he left any, to take his share nevertheless.　In this case there is no provision over; and, this clause of the will standing alone, there is clearly a case of intestacy as to the remainder; and this, on the testator's death, vested in his sole heirs, his widow, Henrietta Bredenberg, and his son, Edward Henry Bredenberg; and on the death of her son, intestate and unmarried, Mrs. Bredenberg became entitled to the whole property in fee.　In this estate in fee her life estate merged, and she became absolute owner of the whole; and this passed to J. J. Bredenberg, in the first instance, and then to Carr.　2d. The second contingency is, that his widow should remarry.　This has not occurred, but may occur.　In this case she loses her life estate, but gets one-

third of the estate in fee.    To the son is given the remaining two-thirds in fee, subject to be divested in case of his death before reaching the age of twenty-one years, or before his mother, without issue.    These two-thirds, in the event of Edward Henry Bredenberg's death, as aforesaid, go to the testator's two brothers, J. J. and J. Peter Bredenberg, "if *they* should be then alive, or between their issue *then* living."    J. Peter Bredenberg died unmarried, and without issue, before Edward Henry Bredenberg's death, so the two brothers were not alive at his death, nor their issue, nor can they be at Mrs. Bredenberg's death, if the "*then*" in the sentence, "if they be *then* alive," refers to that period.    The rule of law is, that the heirs·(in this instance, Mrs. Bredenberg and her son, Edward Henry Bredenberg,) cannot be disinherited, except by express devise or necessary implication.    This is so well established, that as far back as 1841 it was deemed unnecessary to cite authorities for it.    "The rule is so well established, that it suffices to state it."    *Fulham* v. *Wickett*, Wills, 309; *Sibley* v. *Cook*, 3 Atk., 572; *Goodtitle* v. *Pugh*, 3 Bro. P. C., 454. Jarman Wills (ed. 1893), p. 531, s. p. 498, where the rule is thus expressed: "It is a well known maxim, that an heir-at-law can only be disinherited by express devise or necessary implication, and this implication has been defined to be such a strong probability that an intention to the contrary cannot be supposed;" or, as Lord Mansfield expressed it, "Necessary implication is that which leaves no doubt."    *Wilkinson* v. *Adams*, 1 Ves. & Bea., 466.    It prevails in America only, embracing all who are heirs by the statute of distribution, and embracing personal as well as real estate.    1 Jarman Wills, 465, notes 2 and 3 (old edition); Redfield Wills, 433, 435; *Van Kleck* v. *Church*, 6 Paige, 612.    And is fully sustained in our own cases: *Ewing* v. *Ewing*, 2 DeS., 454; *Gordon* v. *Blackman*, 1 Rich. Eq., 61; *Lanham* v. *Meacham*, 4 Strob. Eq., 203; *Crossby* v. *Smith*, 2 Rich. Eq., 244.    It is a fixed rule of our law, "bottomed on the very principle of nature, that a

parent will not disinherit his offspring"—his heirs. *Ewing* v. *Ewing*, 2 DeS., 454. Even if this is not so, Mrs. Bredenberg, if she remarried, got under her husband's will a third of the property in fee, and this certainly passed by her deed to J. J. Bredenberg, and hence now vests in Carr. And should it be held that the brothers take such a vested transmissible interest under the will that, though one was dead at the death of Edward Henry, they still take, then John Peter's share, one-third, went at his death one-half to his nephew, Edward Henry, and one-half to his brother, J. J. Bredenberg. Edward Henry's share passed to his mother on his death, and by her deed to J. J. Bredenberg; so these two-thirds also vested in J. J. Bredenberg, and now vest in C. D. Carr. Thus, even from this point of view, the property would vest entirely in C. D. Carr in the event of Mrs. Bredenberg's remarriage, and she would lose even the right to the income. That Mrs. Bredenberg intended to sell and J. J. Bredenberg to buy the entire fee of this property, seems clear from the deed itself from her to him. It is dated 12th April, 1875, and in consideration of $5,518.18 conveys this property at the corner of Broad and King streets, with some other property, whose value is not given, but apparently of no great value, to J. J. Bredenberg. The words are, "all her right, title and interest of every kind whatsoever, whether *derived through her deceased husband*, Luder Bredenberg, her deceased son, Edward Henry, or otherwise," to the property in question. Then follows the description of this property, closing with the words, "except the life interest and estate therein *bequeathed* to her, and now held by her *under the last will and testament* of her deceased husband, Luder Bredenberg. It is the purpose and intention of this clause of this instrument to convey her entire interest in this property derived from the estate of John Peter Bredenberg, whether as heir-at-law thereof or through her deceased husband, Luder Bredenberg, her deceased son, Edward Henry Bredenberg, or however else derived." * * * She declares it to be her purpose to con-

vey "her entire interest in this property derived from the estate of *John Peter Bredenberg*, whether as heir-at-law or through her deceased son, Edward Henry Bredenberg, or however else derived." From John Peter Bredenberg she could take only through her deceased son. He died after his uncle, John Peter Bredenberg, and inherited the half of whatever he took in his lifetime. This, in the contingency we are considering, was the one-half of two-thirds of the whole property. J. J. Bredenberg took the other half of these two-thirds. So, even taking this as the correct construction of the will, the entire fee vested in J. J. Bredenberg by Mrs. Bredenberg's conveyance, and, consequently, the entire fee has passed to C. D. Carr.

Again, if Mrs. Bredenberg derived through her husband, Luder Bredenberg, only the right to the income for life, she conveyed to J. J. Bredenberg, in consideration of his $5,518, nothing at all; for she expressly reserves this income for life. It is clear that both she and J. J. Bredenberg considered that she had, by the intestacy or otherwise, the absolute fee in the property, and this, subject to the right to receive the income during her life, which she specially reserves, she intended to convey and J. J. Bredenberg to buy. "The object of all rules (of construction) is to ascertain the *intent* of the parties," and when ascertained, this governs, if there are apt words to carry it into effect. Devlin on Deeds, sec. 840; see secs. 836–840. The words Mrs. Bredenberg uses are peculiarly apt to express her intent; she speaks of the income as "*bequeathed*" to her, and "now held by her under the last will and testament of her husband;" of the rest, as "*derived*," not under her husband's will, but *through* her husband; just as she speaks of what she *derived through* her son—who left no will. Any other result would impute bad faith to Mrs. Bredenberg and great folly to J. J. Bredenberg. She would have received and he would have given $5,518, or some part of it, for absolutely nothing from her. At the recent sale, this property brought for the fee $3,750. Both J. J. Bredenberg

and Mrs. Bredenberg are alive. If the above was not their intent, they could easily have testified on the subject. They have given no testimony.

It is, therefore, ordered, adjudged, and decreed, that the fund now held by John F. Ficken, Esq., by the agreement of counsel, be forthwith paid to G. H. Sass, one of the masters of this Court; that the said master invest the same forthwith in such securities as may be agreed upon by the counsel in the cause, or, failing such agreement on their part, in the stock of the State of South Carolina. That after payment of such taxes (if any) as may become due on the same, he pay the net income to Mrs. Henrietta Bredenberg, or her solicitor, during her life. And from, and immediately after, her death, he deliver the securities in which such fund has been invested to the plaintiff or his solicitor. Each party will pay his or her own costs.

The defendants (not including Mrs. Henrietta Bredenberg) appeal on the following grounds:

First. Because the presiding Judge erred in ordering that the fund in question be forthwith paid to G. H. Sass, Esq., master, to be invested and held for the purposes mentioned in the said decree.

Second. Because the presiding Judge erred in ordering and decreeing that from and immediately after the death of Mrs. Henry Bredenberg, the master shall deliver the securities in which the said fund shall have been invested, to the plaintiff or his solicitor.

Third. Because the presiding Judge erred in decreeing that from and immediately after the death of Mrs. Henrietta Bredenberg, the plaintiff will be entitled to the said fund.

Fourth. Because the presiding Judge erred in not holding that in the event that John J. Bredenberg shall predecease the said Henrietta Bredenberg, the said fund, upon the death of the latter, shall vest in and be divided among the issue of the said John J. Bredenberg, who shall be living at the time of the death of the said Henrietta Bredenberg.

*Messrs. Ficken, Hughes & Ficken* and *Gustavus M. Pinckney*, for appellant, cite: *Fund should have been left in hands of trustee:* Harp. Eq., 227; 2 McC. Ch., 143; 1 McC. Ch., 228. *Upon construction of will:* 1 Paige, 343; 2 Cox, 340; 4 Maule & S., 58; L. R., 6; H. L., 24; 6 Rich. Eq., 26, 83, 268; 1 Strob. Eq., 288; 7 Rich. Eq., 125.

*Mr. H. E. Young*, contra, cites: *Upon construction of will:* 4 Rich. Eq., 262; 5 Rich. Eq., 83, 202; 6 Rich. Eq., 240; 12 Rich. Eq., 121; 7 Rich. Eq., 100; 22 S. C., 275; 38 S. C., 39; 10 S. C., 389; 46 S. C., 256; 47 S. C., 294. *Upon failure of issue to remaindermen, property reverts to distributees:* 1 Strob. Eq., 114; 4 Rich. Eq., 414; 7 Rich. Eq., 31; 10 Rich. Eq., 561; McMul. Eq., 230; 1 Rich. Eq., 264; 14 Rich. Eq., 146; 4 S. C., 16. *Life tenant must give security if he contemplates removing property beyond jurisdiction:* 4 DeS. Eq., 26; Harp. Eq., 272; 2 McC. Eq., 32, 143; 1 Hill Eq., 154; 1 Strob. Eq., 12, 50; 2 Strob. Eq., 327; 1 S. C., 179; 8 Rich. Eq., 269; 16 N. J. Eq., 488.

Sept. 30, 1897. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. The facts of this case are undisputed, and are so fully stated in the decree of his Honor, Judge Benet, who heard the case upon an admitted statement of the facts, as to supersede the necessity for any restatement of them here, as that decree, together with the exceptions thereto, will be incorporated by the reporter in his report of the case.

The controversy in the case is as to the disposition which should be made of one-half of the proceeds of the sale of a certain lot in the city of Charleston, which has been sold by consent of all parties, one-half of the proceeds of such sale, about which there is no dispute, has been paid over to the plaintiff, and the other half, which constitutes the subject matter of the contention here, has been placed in the hands of Messrs. Ficken, Hughes & Ficken, to abide the event of this suit. It is manifest that the controversy turns upon the proper construction of the will of

31—50

Luder Bredenberg, and the deed made by Mrs. Henrietta Bredenberg, the widow of the testator, to John J. Bredenberg, under whom the plaintiff claims, in the manner set forth in the Circuit decree. The Circuit Judge held that, in the contingency which now presents itself, Mrs. Henrietta Bredenberg is entitled to the net income of the fund in controversy, and that upon her death the plaintiff will be entitled to the whole of the fund. He further held that, inasmuch as Mrs. Henrietta Bredenberg, the only surviving trustee under the will of Luder Bredenberg, is now, and has been for many years, a resident of the city of Augusta, in the State of Georgia, the said fund should not be paid over to her as trustee, because the fact stated "makes it certain that the fund, if paid to her, will be removed there, and this of itself is sufficient ground to have it paid into Court." He, therefore, ordered that said fund "be forthwith paid to G. H. Sass, one of the masters of this Court; that the said master invest the same forthwith; * * * that after payment of such taxes (if any) as may become due on the same, he pay the net income to Mrs. Henrietta Bredenberg, or her solicitor, during her life. And from and immediately after her death, he deliver the securities in which such fund has been invested to the plaintiff, or his solicitor." It may not be amiss to note here that there is probably an inadvertent error, or rather omission, in directing the income to be paid to Mrs. Henrietta Bredenberg "during her life," without qualification; for it is very manifest, from the terms of the will of Luder Bredenberg, that she will lose her right to the income if she should marry again, and hence the probable intention was to add to the words, "during her life," some such words as these: "Provided she so long remains the widow of Luder Bredenberg." But as this error or omission is not made the subject of any exception, this Court has no authority to direct any correction of such supposed error. From this judgment all of the defendants, except Mrs. Henrietta Bredenberg, appeal, taking the several exceptions set out in the record.

These exceptions practically raise but two questions: 1st. Whether there was error in directing the fund in controversy to be paid into the hands of Master Sass, for the purposes mentioned. 2d. Whether there was error in directing the whole fund to be turned over to the plaintiff upon the death of Mrs. Henrietta Bredenberg.

We will consider these questions in the order stated. There can be no doubt that, by the terms of the will of Luder Bredenberg, this fund alone, with all the rest of his property, was devised and bequeathed to Mrs. Henrietta Bredenberg, as executrix, and John Peter Bredenburg, as executor, in trust, for the purposes declared in the will, one of which was to pay over the income thereof, after deducting necessary expenses, to the said Henrietta Bredenberg, "for and during the term of her natural life, if she should so long remain unmarried and my widow." It is obvious that she and her coexecutor were entitled to the custody and control of the fund; and upon the death of the coexecutor and cotrustee, she became entitled to the sole custody and control thereof. So that the practical inquiry is whether such a showing has been made in this case as will justify the Court in depriving the trustee of the custody and control of this trust fund, and requiring the same to be placed in the hands of one of the officers of the Court, to be managed and disposed of by him in accordance with the terms of the trust. There are two grounds upon which this action on the part of the Court is sought to be justified: 1st. Because it appears that while Mrs. Henrietta Bredenberg owns about $4,500 worth of property besides the real estate below referred to, she only returns "for purposes of city taxation" certain real estate in the city of Augusta valued at $4,500. This, it is assumed, affords sufficient reason to apprehend that if the fund in controversy is placed in her hands, the taxes on it will not be paid, which will operate to the prejudice of whoever may be entitled to the same in remainder. This is the only circumstance relied on to show that the fund, if placed in her hands, would be in

danger of being wasted.     It seems to us that this circumstance is far from sufficient to justify such an apprehension. The only evidence is that while Mrs. Bredenburg returns her real estate in the city of Augusta for the purposes of *city* taxation, she makes no return of her personal property for the purpose of such taxation, and there is no evidence that she fails to return any portion of her property for *State* taxation.     Besides, there is no evidence whatever as to the nature of her personal property not returned for city taxation, and no evidence to show how it is invested; and, as was well suggested by counsel for appellants, such property, for all that appears, may be, and most likely is, invested either in non-taxable government bonds, either State or federal, or in city bonds not liable to city taxation, or in factory, bank or other stocks returnable for taxation by the corporations issuing such stocks.     In view of the fact that, upon well settled principles, the burden of proof is upon those who are asking the Court to deprive a trustee of the custody and control of trust funds—practically to remove the trustee from office—to show some misconduct or mismanagement on the part of the trustee, or some sufficient ground to apprehend that the interests of the *cestui que trust* will be jeopardized by allowing the trust fund to remain in the custody of the trustee, we do not think that the single circumstance relied on for this purpose, in this case, was at all sufficient to justify such an apprehension.     We think, therefore, that the Circuit Judge erred in ordering the trust fund paid into Court upon the first ground above stated.

2d.  The second ground upon which the Circuit Judge rested his order is more formidable.     That ground is, that since the creation of this trust the trustee has removed from this State, and now resides beyond the jurisdiction of the Courts of this State, and hence if the fund should be paid over to such trustee, there is every reason to believe that the trust fund will be removed beyond the jurisdiction of the Court.     While there is no doubt of the *power* of the Court to authorize the payment

of a trust fund, under its control, to a trustee residing beyond the jurisdiction, thus allowing such fund to be removed beyond the jurisdiction, yet such power will not be exercised unless the Court is satisfied, after careful investigation, of the expediency or necessity for such removal, and then only upon such terms as the nature of the case may require, or as experience may suggest to be necessary. *Ex parte Smith*, 1 Hill Ch., 140; *Ex parte Heard*, 2 Hill Ch., 54; *Ex parte Tunno*, Bail. Eq., 395; *Ex parte Copeland*, Rice Ch., 69, and *Cochran* v. *Fillans*, 20 S. C., 237. As was said by that eminently prudent and careful Chancellor, the late Chief Justice Dunkin, in *Ex parte Copeland, supra*, "The application is always addressed to the sound discretion of the Court. The presumption should always be against the removal of funds beyond the jurisdiction of the Court; where the expediency or necessity is made clearly to appear, permission should be granted only on such terms as the nature of the case may require, or as experience may suggest to be necessary." In *Cochran* v. *Fillans, supra*, this subject was very carefully considered by the late Mr. Justice McGowan, where, amongst other things, it was held that, before permitting property in this State, belonging to an infant, to be transferred beyond the limits of the State, the Court must be satisfied: "(1) that the guardian has been regularly appointed, according to the laws of the State in which the ward resides; (2) the fitness of such guardian for the appointment; and (3) that sufficient security has been given." And the same rule applies to cases of foreign trustees of an infant *cestui que trust* who has property here. And we may add, that we see no reason why the same rule should not apply where the *cestui que trust* is *sui juris*, except, perhaps, where such *cestui que trust* acquiesces in the removal of the trust fund; for, as is well said in that case, "the practice of requiring security in such cases does not depend upon the domicile of the *cestui que trust*, or the manner in which his foreign guardian or trustee was appointed, but upon the view that, the property being within

the jurisdiction, the Court is, in some sense, responsible for its safety, and will, therefore, not yield that control, except upon such terms as will certainly secure and protect it." We are of opinion, therefore, that there was no error on the part of the Circuit Judge in declining to order the trust fund paid over to the trustee, Mrs. Henrietta Bredenberg, she having removed beyond the jurisdiction; but, at the same time, we think she should have been allowed the privilege of receiving the trust fund, upon executing a sufficient bond, to be approved by one of the masters, with sureties, amenable to the jurisdiction of the Court (*Ex parte Robert*, 2 Strob. Eq., 86), conditioned for the faithful discharge of the duties of her trust, and, also, that she will not remove the trust fund beyond the jurisdiction, and will account regularly for the same, before the proper officer; and that only upon her failure to give such bond, the fund shall be paid to Master Sass, to be by him administered under the control of the Court.

It is contended, however, that Mrs. Henrietta Bredenberg, by not appealing from the Circuit decree, has acquiesced in all of its provisions, and hence the question as to the propriety of the order directing the fund to be paid to the master, is not properly before this Court. But all of the other defendants have appealed, and by their exceptions have raised this question, and as they are persons who, in one of the contingencies contemplated by the will of Luder Bredenberg, which has not yet but may hereafter arise, may, possibly, be entitled to an interest in the trust fund, it seems to us that they have a right to raise the question. It is not difficult to conceive of a case in which a trustee would be glad to be relieved of the burden of administering a trust fund, and would readily acquiesce in an order removing him from his office as trustee; but a trustee is appointed for the express purpose of protecting the interest of his *cestui que trust*, and if he fails to do so, then the *cestui que trust* may invoke the aid of the Court. Of course, we do not mean to intimate that any

such motive actuated the trustee in this case, in declining to appeal, for it matters not what was her motive, her failure to raise the question cannot prevent those who may possibly have an interest in the trust fund from doing so, and insisting that the fund shall remain in the custody and under the control of the person specially selected by the testator for that purpose.

This brings us to the second question raised by the exceptions, as to who will be entitled to the trust fund at the death of Mrs. Henrietta Bredenberg, if she remains unmarried until that event happens. This depends upon the proper construction of the following clause, or item, of Luder Bredenberg's will: "I give, devise and bequeath all my property, real and personal property, to my executrix and executor, hereinafter named, in trust for the following purposes, that is to say: to apply and pay over the whole income thereof, after deducting necessary expenses, to my dear wife, Henrietta Bredenberg, for and during the term of her natural life, if she should so long remain unmarried and my widow, and upon her death, then I give, devise and bequeath the whole of my said property to my son, Edward Henry Bredenberg, in fee, if he should then be alive, or to his issue, should he be then dead; but in case my said wife should marry again, then, on the happening of that event, I will and direct my executrix and executor to pay over to her one-third part of my said estate, and to hold the balance for the support and maintenance of my said son until he is twenty-one years of age, and upon his arrival at that age, the balance of my estate I give to him and his heirs forever; but should my said son die before reaching the age of twenty-one years or before his mother, leaving no issue, then I give, devise and bequeath the estate hereby given and devised to him, to be equally divided between my two brothers, J. J. Bredenberg and J. P. Bredenberg, if they should be then alive, or between their issue then living, the issue to represent and take a parent's share among them in said distribution."

Mrs. Henrietta Bredenberg was named as executrix and John Peter Bredenberg as executor, both of whom qualified. While this clause of the will is in one continuous sentence, without punctuation marks other than commas, yet it is manifest, from the language used, that the testator, in making this disposition of his property, had in his mind two distinct and different contingencies—first, that his widow should not marry again; second, that his widow might marry a second time; and that he made different provisions as to the disposition of his property accordingly as the one or the other contingency should arise. If the first contingency arose, to wit: that his wife should remain his widow, then the testator plainly expressed his intention that she should be entitled to the whole income of all his property for and during the term of her natural life, and upon her death the whole of the property should go to his son, Edward Henry Bredenberg, "*in fee,*" if he should be then alive, or to his issue should he be then dead, without any ulterior limitations over. But if the second contingency should arise, then not only a different disposition of his property is made, but one wholly inconsistent with the disposition intended in case the first contingency only should arise, to wit: that the widow should take one-third part of the estate in fee, and that the remaining two-thirds should be held by the trustees for the support and maintenance of the son until he is twenty-one years of age, and upon his arrival at that age the same should go to the son, in fee. But should the son die before attaining the age of twenty-one years, or before his mother, leaving no issue, then "the estate hereby given and devised to him to be equally divided between my two brothers, J. J. Bredenberg and J. P. Bredenberg, if they should be then alive, or between their issue then living,.the issue to represent and take a parent's share among them in said distribution." This being so, it seems to us that there is no ulterior limitation over in case of the death of the son leaving no issue, in the contingency which now presents itself, and that such

ulterior limitation over in favor of the brothers of the testator, or their issue, was only intended to take effect in a contingency which has not yet arisen, and in all probability never will arise. The contention on the part of the appellants, that this ulterior limitation was intended to take effect in either contingency, cannot be sustained. There is no language in the will evincive of any intention on the part of the testator to make any provision for his brothers or their issue unless the widow should marry again, and, therefore, until that event shall happen, it would be premature now to consider the nature or effect of such ulterior limitation. On the contrary, we think the language used by the testator shows that he intended that, in the contingency which now presents itself, the income of the whole of his estate should be paid over to his widow, and that upon her death, the whole of his estate should go to his son, "in fee, if he should be then alive, or to his issue should he be then dead," without other or further limitation. Having thus declared his intention as to the disposition of his property in one of the two contingencies, which he manifestly contemplated when he made his will, he next proceeds to declare his intention as to how his property shall be disposed of in the event that the other contingency should arise; and then, for the first time, uses language showing an intention that the provision made for his son, *in that contingency*, shall be limited over to his brothers or their issue, in case his son should die without issue during the lifetime of his wife, or before he attained the age of twenty-one years. The argument based upon the use of the word "hereby" in this portion of the will does not impress us. On the contrary, it seems to us that the use of that word, in the connection in which it is found, rather tends to sustain our view. For it is obvious that the provision made for the son, in case the first contingency should arise, is much larger than that made for the son in the event that the second contingency should happen, and that word would be quite appropriate to show that the testator

meant that only, the provision made for the son, in the case of the happening of the second contingency, should be subject to the limitation over. We are, therefore, of opinion that there was no error on the part of the Circuit Judge in holding that, *in the contingency which now presents itself,* the plaintiff, having acquired the rights of John J. Bredenberg and Mrs. Henrietta Bredenberg, will be entitled to the fund in controversy upon the death of Mrs. Henrietta Bredenberg, provided she remains unmarried.

But as the fund in controversy has been placed in the hands of a trustee, to be appropriated in the manner directed by the will, and as a contingency may arise in which, possibly, others may be entitled to the fund, we think there was error in *now* making an order that the fund in question be turned over to the plaintiff upon the death of Mrs. Henrietta Bredenberg.

The judgment of this Court is, that the judgment of the Circuit Court be so modified as to conform to the views herein announced, and that the case be remanded to that Court, with instructions to pass an order that, upon the execution by Mrs. Henrietta Bredenberg of a bond, in a sufficient sum to protect the fund, with sureties amenable to the jurisdiction of the Court, to be approved by one of the masters, conditioned for the faithful discharge of the duties of her trust, and also that she will not remove the trust fund beyond the jurisdiction of the Court, and will account regularly for the same before the proper officer, the fund in question be paid over to the said Henrietta Bredenberg; but upon her failure to execute such bond, within a time to be prescribed by the Circuit Court, that the said fund be paid over to G. H. Sass, Esq., as master, to be by him invested in such securities as may be agreed upon by the counsel in the cause, or, failing such agreement, in the stock of the State of South Carolina; that after the payment of the taxes (if any) which may become due on the same, he pay the net income to Mrs. Henrietta Bredenberg, or her solicitor, during her life, or so long as she may re-

main unmarried; and upon her death, provided she remains unmarried, that the said master shall deliver the securities in which such fund has been invested to the plaintiff, or his solicitor; but if the said Henrietta Bredenberg shall marry again, then said master shall hold said fund, subject to such order as the Court may then make in reference to the disposition thereof.